**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

EDWARD A. JORDAN,          )
      **Plaintiff,**          )
                     )
**v.**          )          **CIVIL ACTION NO. 5:02-0488**
                     )
**DEPUTY LAMBERT,** *et al.*,          )
      **Defendants.**          )

## PROPOSED FINDINGS AND RECOMMENDATION

On May 28, 2002, Plaintiff, an inmate then incarcerated at the Southern Regional Jail, Beaver, West Virginia, and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief under 42 U.S.C. § 1983.[1] (Document No. 1.) Plaintiff contends that the Defendants subjected him to excessive force in violation of his constitutional rights. (Document No. 1.) By Standing Order also filed on May 28, 2002, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

## FACT AND PROCEDURE

On June 7, 2001, Plaintiff appeared in the Raleigh County Magistrate Court before Magistrate Mary K. Jennings on a capias warrant to answer charges that he failed to appear in Court on relatively minor traffic charges. (Document No. 55, p. 4.) Plaintiff filed his Complaint in this civil action on May 28, 2002, complaining that during his Court appearance, Defendant Deputy Lambert violated

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore, are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

his constitutional rights by choking and strangling him while he was handcuffed. (Document No.1.)

He alleges that as a result of Defendant Deputy Lambert's conduct, he sustained "serious neck and

back injuries" and therefore, is unable to work. (Id.) He also alleges that he incurred medical

expenses related to his injuries. (Id.) Finally, Plaintiff contends that "nothing was done about this

matter from Officer[] Lambert['s] supervisors."[2] (Id.)

_____

[2] The undersigned notes that subsequent to Plaintiff's June 7, 2001, Court appearance, the following actions transpired with respect to Plaintiff, which was considered by the undersigned in denying Plaintiff's previously filed Motions to Amend:

On November, 20, 2002, Plaintiff was arrested by Chief S.D. Johnson in Jefferson, Kanawha County, West Virginia, pursuant to a Warrant for his arrest. (Document No. 35, Exhibit 1.) The Warranted declared that probable cause had been found to believe that Plaintiff "knowingly, intentionally and feloniously deliver[ed] to another person a quantity of crack cocaine, a Schedule II controlled substance in violation of WV Code § 60A-4-401(a)." (Id.) Plaintiff was presented to the Raleigh County Magistrate Mary K. Jennings via video arraignment on November 22, 2002. (Document No. 35, p. 2.) According to Magistrate Mary K. Jennings, Plaintiff refused to indicate during such proceeding whether he wanted a preliminary hearing and advised the Court that his attorney would telephone Magistrate Jennings. (Document No. 35, Exhibit 3.) Plaintiff avers however, that he requested that a preliminary hearing be scheduled and counsel appointed. (Document No. 35, p. 2.) Nevertheless, a preliminary hearing was scheduled on December 2, 2002, before Magistrate John E. Tanner. (Id., p. 2 and Exhibit 3.) By Order of the Circuit Court of Raleigh County, entered November 27, 2002, the West Virginia Regional Jail Authority was directed to transport Plaintiff from the Central Regional Jail, Charleston, West Virginia, to the Southern Regional Jail, Beaver, West Virginia. (Id., Exhibit 2.) Counsel was not appointed prior to the hearing because Plaintiff had not completed a Financial Affidavit. (Id., Exhibit 3.) Before the hearing commenced, Plaintiff requested several times that Magistrate Tanner appoint him counsel, but Plaintiff persistently refused to complete the required financial affidavit without the presence of an attorney. (Id.) Magistrate Tanner discussed the matter with Mr. Buffington who advised that "per Joseph Noggy, Chief Public Defender that unless Mr. Jordan filled out his affidavit and a member of the Public defenders corporation was appointed that they could not assist Mr. Jordan." (Id.) Magistrate Tanner relayed this information to Plaintiff to no avail. (Id.) The hearing commenced and Plaintiff moved to dismiss the charges against him. (Id.) Plaintiff argued that he had been denied his constitutional right to counsel and therefore, it was impossible for him to receive a preliminary hearing within the ten day period of time required by Rule 5.1(c) of the West Virginia Rules of Criminal Procedure. (Document No. 35, p. 3.) Magistrate Tanner denied his motion and declined to continue with the preliminary hearing to protect Plaintiff's constitutional right to counsel. (Exhibit 3, p. 2.) Plaintiff subsequently completed a Financial Affidavit and was appointed an attorney through the Public Defenders Corporation.

2

Defendants, Deputy Lambert and the Raleigh County Sheriff's Department, by counsel, Chip E. Williams and the law firm of Pullin, Fowler & Flanagan, filed their Answer to Plaintiff's Complaint on November 3, 2003.[3] (Document No. 17.) On December 29, 2003, Plaintiff filed his "Motion to Add State of W.Va. To Lawsuit," seeking to amend his Complaint to name as Defendants, the State of West Virginia, Raleigh County Magistrate Judge Mary K. Jennings, and Douglas P. Buffington II, former Assistant Public Defender.[4] (Document No. 21.) In his Motion, Plaintiff contended that Magistrate Mary K. Jennings and Douglas P. Buffington II, "acting in their capacity of employees of the State of W.Va. . . . [were] instrument[al] in violating my civil and constitutional rights." (Id., p. 1.) On January 8, 2004, the Defendants filed their objections to Plaintiff's Motion to amend, contending, *inter alia*, that he stated no basis for his claims against the proposed Defendants and therefore, his Motion was filed in bad faith. (Document No. 22.) Defendants further argued that the State of West Virginia is immune from suit under the doctrine of sovereign immunity, Magistrate

---

On January 29, 2003, a hearing was held before the Honorable John A. Hutchison, Judge, Circuit Court of Raleigh County, West Virginia, upon Plaintiff's Motion to Dismiss. (Document No. 37, p. 3 and Attachment.) Judge Hutchison found that Plaintiff knew that he was required to complete a Financial Affidavit before counsel could be appointed and that he knew how to complete such Affidavit without the assistance of counsel. (*Id.*) Consequently, the Circuit Court concluded that Plaintiff waived his right to a preliminary hearing and denied his Motion to Dismiss. (*Id.*)

[3] It is significant to note that on February 11, 2003, the undersigned entered Proposed Findings and Recommendation that the District Court dismiss this civil action for Plaintiff's failure to prosecute. (Document No. 6.) On March 3, 2003, however, Plaintiff filed objections to the Proposed Findings and Recommendation in which he contended that this matter should not be dismissed because he never received the Court's Order returning his Application to Proceed *in Forma Pauperis* as deficient. (Document No. 7.) By Order entered March 4, 2003, the undersigned withdrew his Proposed Findings and Recommendation, finding that Plaintiff's transfer between two jails in the West Virginia Regional Jail System established good cause for his failure to respond to the Court's Orders. (Document No. 8.)

[4] The undersigned notes that Douglas P. Buffington II, is presently employed as an associate at Pullin, Fowler & Flanagan, the law firm representing Defendants Deputy Lambert and the Raleigh County Sheriff's Department in this civil action.

Mary K. Jennings was judicially immune from suit, and Douglas P. Buffington II, as a former state public defender was immune from suit under West Virginia Code § 29-21-20. (Id., p. 4.) Plaintiff filed his Reply on January 20, 2004, to which Defendants filed their further Response on January 29, 2004. (Document Nos. 23, 26.) By Order entered April 7, 2004, the undersigned denied Plaintiff's Motion to include the State of West Virginia and Magistrate Mary K. Jennings as Defendants in this civil action because they were immune from suit by the doctrines of sovereign immunity and judicial immunity, respectively. (Document No. 31, pp. 4-5.) With respect to Douglas P. Buffington II, however, the undersigned "was unable to determine the precise nature of Plaintiff's claim(s) against him . . . [and ordered Plaintiff to] file with the Court his more definite statement of the claims he wishes to pursue against Mr. Buffington." (Id., pp. 5-6.)

In response to the Court's Order, Plaintiff filed on May 6, 2004, his More Definite Statement of the proposed claims against Mr. Buffington, with copies of documents related to his state court proceedings attached as Exhibits 1 through 8. (Document No. 35.) Plaintiff alleged that Mr. Buffington violated his constitutional rights under the Sixth and Fourteenth Amendments when he failed to report an ethical violation as required by the West Virginia Rules of Professional Conduct, which resulted in Plaintiff's continued incarceration for eighteen months, lost wages, and an inability to retain an attorney, and obtain medical attention and medication. (Id., pp. 4-5.) He further alleged that Mr. Buffington knew prior to December 2, 2002, that he would be working with the law firm of Pullin, Fowler & Flanagan, and that he failed to provide representation to him during the preliminary hearing in an effort to bestow a benefit on his future employer. (Id., p. 5.) On May 17, 2004, Defendants filed their Reply to Plaintiff's More Definite Statement, arguing that Plaintiff's proposed claims against Mr. Buffington were without merit. (Document No. 37.) Defendants attached to their

Reply, an Affidavit from Mr. Buffington and the transcript of a hearing conducted in the Circuit Court of Raleigh County on January 29, 2003. (Id.) Plaintiff filed his Reply on June 1, 2004 (Document No. 41.), to which Defendants objected on June 8, 2004. (Document No. 43.)

Plaintiff's Motion to name Mr. Buffington as a Defendant was denied by Order entered September 24, 2004. (Document No. 51.) In denying the Motion, the undersigned found that Mr. Buffington's alleged negligent failure to report a violation under the West Virginia rules did not deny Plaintiff of due process and therefore, failed to state a claim of constitutional magnitude. (Id., pp. 8-9.) Additionally, to find that Mr. Buffington failed to report an ethical violation required the Court to conclude that such a violation in fact occurred during the course of Plaintiff's state criminal proceedings, which would have implied the invalidity of his underlying criminal convictions. (Id., pp. 9-10.) The undersigned further found that Plaintiff's claim that Mr. Buffington refused to provide him assistance because of his anticipated employment with Pullin, Fowler & Flanagan, was conclusory and entirely unfounded. (Id., pp. 11-12.) Finally, the undersigned found that Plaintiff failed to allege any facts to establish that Mr. Buffington formed an agreement with anyone to injure him and therefore, failed to state a claim of conspiracy. (Id., pp. 12-13.)

On October 15, 2004, the Defendants filed their Motion for Summary Judgment and Memorandum of Law in Support. (Document Nos. 52-53.) Attached to their Memorandum are the following Exhibits: (Exhibit A) Plea Agreement, Guilty Plea, and Sentencing Order entered in the Circuit Court of Monongalia County; (Exhibit B) Jury, Verdict and Post-Trial Orders entered in the Circuit Court of Monongalia County; (Exhibit C) Affidavit of Defendant Les Lambert; (Exhibit D) Partial transcript of Shwan Jordan's transcript; (Exhibit E) Affidavit of Jeremy Dove, a witness to the alleged altercation; (Exhibits F-G) Partial transcripts of Plaintiff's deposition; and (Exhibits H-I)

5

Plaintiff's medical records from Beckley Imaging dated June 8, 2001, and October 31, 2003. (Document No. 53.) In their Memorandum, Defendants contend that they are entitled to summary judgment for the following reasons: (1) Defendant Deputy Les Lambert is entitled to qualified immunity (Document No. 53, pp. 3-12.), and (2) Plaintiff has failed to establish that Defendant Raleigh County Sheriff's Department is vicariously liable for the actions of its employees. (Id., pp. 12-17.) In support of his claim that he is entitled to qualified immunity, Defendant Deputy Lambert asserts that Plaintiff cannot prove his conduct violated his constitutional rights and that the constitutional rights violated were clearly established at the time when he acted in violation of them. (Id., pp. 3-12.) Specifically, Defendant Deputy Lambert contends that Plaintiff cannot demonstrate that his actions were unlawful or inappropriate under the circumstances. (Id., pp. 5-8.) He further contends that because Plaintiff's injuries are *de minimis*, his claim is not actionable under § 1983. (Id., pp. 8-12.) Concerning their second claim, Defendants contend that Plaintiff has not shown that Defendant Raleigh County Sheriff's Department had a policy promoting the use of excessive force which resulted in Plaintiff's alleged injuries and therefore, the Defendant Sheriff's Department, considered as a municipality, cannot be held liable under a theory of *respondeat superior*. (Id., pp. 12-17.)

By Orders filed on November 6, 2003, and April 7, 2004, Plaintiff was advised of his right to file a response to the Defendants' Motion for Summary Judgment, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Document Nos. 18, 31.) On October 25, 2004, Plaintiff filed his "Reply to Defendant Motion for Summary Judgment." (Document No. 54.) In response to Defendants' consideration of his claim of excessive under the Fourteenth Amendment, Plaintiff states:

> My claim is that Officer Lambert attacked me without cause, and why my hands were cuffed behind my back and caused me injuries that I still have today, and that violated my civil and constitutional rights when he did that.

(Id., p. 1.) With respect to Defendant Lambert's qualified immunity defense, Plaintiff argues that because he never threatened Magistrate Jennings or anyone else, verbally or physically, Defendant Lambert's actions in reliance upon convictions nearly ten years old, were unreasonable. (Id., pp. 1-2.) Defendant Lambert's actions were not that "of a reasonable officer, and this act was done with malice, gross negligence, and hatred." (Id., p. 2.) Plaintiff further argues that if Defendant Lambert's actions were reasonable, then "Magistrate Jennings would not have had to run from the room and in the process telling Officer Lambert to remove his arm from my throat and saying 'you can't do that to him.'" (Id., p. 3.) Plaintiff describes the alleged attack as follows:

> That only immediately after I stated the fact to Magistrate Jennings several times that I should be allowed an attorney because her so called non jailable offense would turn into a jailable offense if I did not make bond, and the fact that I believed that Ms. Jennings would not give me a fair hearing and another Magistrate should hear this - because of my positioning in her office, and while attempting to look around the corner to see if another Magistrate was present in the adjoining office which was no more than 2 feet to where I was seated, but to[o] far to see into from the positioning of my seating - and while mentioning just before standing that I would like to see if there was another Magistrate present in the next office and while looking around the corner to see so is when Deputy Lambert attacked me. And thus, Deputy Lambert knew that my actions showed me attempting to see if there was another Magistrate present in the next office that I could request to hear that matter.

(Id., pp. 6-7.) Finally, with respect to proving the extent of his injuries, Plaintiff avers that his medical documents were unlawfully confiscated by the Jefferson County Sheriff's Department, but that the Defendants have obtained copies of his medical records and refuse to give Plaintiff a copy. (Id., pp. 3-5.) Plaintiff states:

> The necessary documents exist along with bills etc. and are in custody of the defendants along with documents of my taking medications for these injuries over

the last 2 years while in custody of which is documented and of which is also in possession of the Defendants and of which I am not allowed access to of which the Defendants also know.

(Id., p. 5.)

Defendants filed their Reply to Plaintiff's response on November 17, 2004. (Document No. 55.) Citing Lowery v. Stovall, 92 F.3d 219, 222, cert. denied sub nom., Lowery v. Redd, 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997), Defendants contend that even considering Plaintiff's claim of excessive force under the Fourth Amendment, he has failed to demonstrate that Defendant Deputy Lambert's actions were unlawful. (Id., pp. 3-6.) Defendants argue that Defendant Deputy Lambert was aware of Plaintiff's propensity for violence and his stature, and in evaluating the potential risk to Magistrate Jennings, determined that he was capable of harming her. (Id.) Defendants further contend that they have not improperly withheld Plaintiff's medical records from him. (Id., p. 6.) Defendants admit that they possess Plaintiff's medical records from Southern Regional Jail and Raleigh General Hospital, of which Plaintiff was aware, but do not possess his medical records from other hospitals. (Id., p. 7.) Although Plaintiff states that the Defendants refused to provide him a copy of his medical records, Defendants aver that "Plaintiff has not request[ed] a copy of medical records we obtained and, as such, none have been provided." (Id.) To the extent Plaintiff claims that he requested these documents in Interrogatory Number C when he requested "any and all exhibits that the Defense intends to produce at trial concerning this matter," Defendants contend that in the absence of a scheduled trial date, a determination of such exhibits has not been made. (Id.)

On December 6, 2004, Plaintiff filed his further Reply, in which he alleges that the Defendants have violated his rights under the Fourth, Eighth, and Fourteenth Amendments, and

"possibly," the Sixth Amendment. (Document No. 56, p. 2.) First, Plaintiff alleges that Defendant

Deputy Lambert attacked him by using excessive force in violation of his due process rights under

the Fourteenth Amendment. (Id., p. 3) Second, he claims that his Fourth Amendment rights were

violated when he was arrested, handcuffed, and attacked by Defendant Deputy Lambert for offenses

not punishable by a term of imprisonment. (Id., p. 4.) He avers "that the seizure of my body was

illegal and the attack that occurred by Officer Lambert on me during that seizure violated both my

14th and 4th Amendment rights under the U.S. Constitution." (Id.) Third, Plaintiff alleges that

Defendant Deputy Lambert's attack constituted cruel and unusual punishment in violation of the

Eighth Amendment. (Id., pp. 4-5.) Plaintiff does not state a specific violation of his Sixth

Amendment rights.

## THE APPLICABLE STANDARD

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Once the moving party demonstrates the lack of evidence to support the non-moving party's claims,

the non-moving party must go beyond the pleadings and make a sufficient showing of facts

presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106

S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the

light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

Summary judgment is required when a party fails to make a showing sufficient to establish an

essential element of a claim, even if there are genuine factual issues proving other elements of the

claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### 1.      Plaintiff's Claim of Excessive Force.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). Claims of excessive force during "an arrest, investigatory stop, or other 'seizure' of a free citizen'" are considered under the objective reasonableness standard under the Fourth Amendment. Id. at 386, 109 S.Ct. at 1867. Claims of excessive force occurring after an arrest, but before formal adjudication of guilt are considered under the Due Process Clause of the Fourteenth Amendment. See Riley v. Dorton, 115 F.3d 1159, 1161-62, 1164 (4th Cir. 1997)(Holding that the Fourth Amendment "does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody.")(citing Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Finally, claims of excessive force occurring after conviction and sentence are cognizable under the Eighth Amendment. See Graham, 490 U.S. at 392, n.6, 109 S.Ct. 1870, n.6. In finding that the plaintiff was a pretrial detainee as opposed to an arrestee, the Riley Court emphasized that the alleged unconstitutional acts occurred about two hours and ninety miles from the time and place of his lawful arrest. Id., 115 F.3d at 1161 ("'[A]s one lawfully arrested and being held prior to a formal adjudication of guilt,'Riley is adjudged in our circuit to be a pretrial detainee.")(internal citations omitted). Defendant Deputy

Lambert's alleged use of excessive force occurred during a hearing following Plaintiff's arrest.[5]

Accordingly, Defendants have correctly identified Plaintiff as a then pretrial detainee and the

applicable constitutional provision; Pursuant to the  Fourth Circuit's holding in <u>Riley</u>, Plaintiff's

claim of excessive force is appropriately considered under the Due Process Clause of the Fourteenth

Amendment and not under the Fourth and Eighth Amendments.[6]

To prevail upon a claim of excessive force under the Fourteenth Amendment therefore, the

pretrial detainee must establish that the law enforcement officers "inflicted unnecessary and wanton

pain and suffering." <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251

(1986) (citations omitted) The appropriate inquiry therefore, is "whether force was applied in a good

faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of

causing harm." <u>Id</u>. When the constitutionality of the force used is not apparent on its face and must

be determined by the Court, the reason for its application may be weighed "against the amount of

force applied." <u>Gray v. Spillman</u>, 925 F.2d 90, 94 (4th Cir. 1991). Under such circumstances, "*de*

*minimis* injury can serve as conclusive evidence that *de minimis* force was used." <u>Riley</u>, 115 F.3d

at 1168. The extent of the injury resulting from the use of excessive force "only comes into play

when the nature of the force must be weighed against the proffered justification for its application."

<u>Gray</u>, 925 F.2d at 93. The existence of physical injuries "is relevant in assessing the amount of

---

[5] The undersigned notes that the record does not identify the arresting officer, but indicates that it was someone other than Defendant Deputy Lambert. (Document No. 55, p. 4.)

[6] Although Plaintiff alleges in his Surreply that he was unlawfully arrested in violation of the Fourth Amendment, this claim was neither raised in his initial Complaint, nor in any subsequent Motions to amend his Complaint. Furthermore, Plaintiff was arrested by law enforcement officers in Kanawha County, none of whom are named Defendants in this civil action. Accordingly, Plaintiff's Fourth Amendment claim is not properly before the Court and is not addressed in this Proposed Findings and Recommendation.

actual damages; it is not a prerequisite to suit." Id. at 93. Accordingly, if the pretrial detainee is unable to prove actual injury, his recovery may be limited to nominal damages. Id. at 94 n.1.

In Gray, a pretrial detainee alleged that he was beaten and injured during two custodial interrogations. Gray, 925 F.2d at 90. Specifically, he claimed that the defendant officer placed him in handcuffs which were too tight and caused his hands to swell; kept him in a room for several hours without food, water, and cigarettes; shoved his face into a wall, thereby injuring his lip and knocking loose three teeth; threatened to beat him; and kicked his foot, causing severe pain and swelling. Id. at 91. The Fourth Circuit held that the "existence of physical injury is not an essential element of a § 1983 claim when a person during custodial interrogation is beaten or psychologically intimidated in a manner equivalent to beating." Id. at 94.

Subsequent to Gray, the Fourth Circuit decided Riley, another case in which a pretrial detainee claimed that police officers used excessive force during an interrogation after his arrest. Riley, 115 F.3d at 1161. The pretrial detainee alleged that an officer "inserted the tip of his pen a quarter of an inch into Riley's nose, threatening to rip it open." Id. He further alleged that the officer "threatened to throw him into a corner and beat him, and that [the officer] slapped him across the face with 'medium' force, scraping Riley's face with his fingernails." Id. The Fourth Circuit, held that a pretrial detainee cannot prevail on a claim of excessive force under the Fourteenth Amendment if the injury is de minimis. Id. at 1166-67; see also, Taylor v. McDuffie, 155 F.3d 479, 483-84 (4th Cir. 1998), cert. denied, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999)(Finding that because the pretrial detainee failed to demonstrate that his injuries were more than de minimis, he failed to prove an essential element of his § 1983 action, thereby requiring dismissal."). In support of a showing of more than de minimis injury, the Riley Court stated:

> Punishment must mean something more than trifling injury or negligible force. Otherwise, every touch would be actionable and every alleged "push or shove" would entitle plaintiff to a trial. This is no idle concern. Those in detention often detest those charged with supervising their confinement, and seek to even the score through the medium of a lawsuit. The Constitution, however, does not exist to scoop up every last speck of detainee discontent. To hold that every incident involving contact between an officer and a detainee creates a constitutional action, even in the absence of injury, trivializes the nation's fundamental document.

Riley, 115 F.3d at 1167.

Based on the foregoing, the undersigned considers the extent of Plaintiff's injury as an objective factor in determining whether Defendant Deputy Lambert's conduct violated Plaintiff's Fourteenth Amendment due process rights. The allegations and factual background as it may be found in Plaintiff's Complaint and Responses and Defendants' Motion and Reply, do not present a claim of constitutional magnitude. First, the undersigned finds that Defendant Deputy Lambert's conduct was made in a good faith effort to maintain or restore discipline within the Raleigh County Magistrate Court. Viewing the evidence favorably to Plaintiff, the undersigned finds that on June 7, 2001, Plaintiff appeared before Magistrate Mary K. Jennings on a capias warrant for his failure to appear. (Document No. 55, p. 4.) As his job routinely requires him to attend various court proceedings, Defendant Deputy Lambert happened to be present in Magistrate Jennings' office when Plaintiff was brought in and remained throughout Plaintiff's hearing. (Document No. 53, Exhibit C, ¶ 2.) Plaintiff's statements reveal that he became agitated with the fact that Magistrate Mary K. Jennings was conducting the hearing because he believed she would not afford him a fair hearing. (Document No. 54, p. 7.) The evidence also reveals that Plaintiff became visibly upset when advised that if he could not post bond, he would be confined. (Document No. 53, Exhibit C, ¶ 5.) Plaintiff therefore, began looking about the room to see if another Magistrate was present who could hear his case and started yelling and rising from his chair. (Document Nos. 54, p. 7 and 53, p. 6.) The

13

deposition statement of Plaintiff's brother, Shawn Jordan, confirms Defendant Deputy Lambert's statement that Plaintiff was yelling. (Document No. 53, Exhibit D, p. 10, line 4.) At that point, based upon Plaintiff's "history of violence, his physical ability to harm others and the fact he was yelling and raising out of his chair," Defendant Deputy Lambert approached Plaintiff and restrained him with his forearm until he calmed down, at which time he released Plaintiff. (Document No. 53, p. 6 and Exhibit C, ¶¶ 6-7.) The Affidavit of Jeremy Dove, a former City of Beckley Police Officer and witness to the altercation, confirms Defendant Deputy Lambert's statements. (Document No. 53, Exhibit E.) Mr. Dove states that because it appeared Plaintiff was becoming "increasingly agitated and with his history of violence, I was concerned he might charge Magistrate Jennings." (Id., ¶ 5.) He further states that Defendant Deputy Lambert attempted to speak with Plaintiff, but when Plaintiff would not respond, he "was forced to restrain him" with his arm. (Id., ¶¶ 5-6.) Mr. Dove avers that Defendant Deputy Lambert's conduct was in accordance with "proper police procedure." (Id., ¶ 7.)

Accordingly, the undersigned finds that Defendant Deputy Lambert's conduct was reasonable and necessary to prevent possible harm to Magistrate Jennings and others present during the hearing. The record reveals that in 1994 Petitioner was convicted of attempted murder, and in 1996 he was convicted of assault of a correctional officer. (Document No. 53, Exhibits A-B.) These convictions combined with Plaintiff's physical stature, i.e., six foot four inches tall and weighing 250 pounds, his increased agitation with the direction of his hearing, and his behavior of screaming and raising out of his chair, were reasonably perceived by Defendant Deputy Lambert as creating a substantial risk that he would become violent. Although Plaintiff states that he was handcuffed throughout the proceedings, the record does not indicate that his legs were shackled so as to prevent

14

him from moving toward Magistrate Jennings or anyone else. Defendant Deputy Lambert immediately released Plaintiff from his restraint after he calmed down.

Second, the undersigned finds that Plaintiff has not demonstrated that Defendant Deputy Lambert, in restraining him, acted maliciously and sadistically. As discussed, Defendant Deputy Lambert's actions were made in a good faith attempt to prevent a substantial risk of harm to Magistrate Jennings and other persons in attendance of the hearing. Although Plaintiff claims that Defendant Deputy Lambert's actions were made with "hatred" toward him, nothing of record, beyond Plaintiff's self-serving statement, demonstrates that Deputy Lambert was motivated to harm Plaintiff. Accordingly, Plaintiff has failed to satisfy the subjective component of the excessive force analysis under the Fourteenth Amendment.

Furthermore, the undersigned finds that Plaintiff has not demonstrated that his injuries resulting from Defendant Deputy Lambert's conduct are of a constitutional magnitude. In his deposition, Plaintiff alleged that he believed he was diagnosed with having a possible slipped or misplaced disc. (Document No. 53, Exhibit G, p. 100.) He further states in his Complaint that he has "serious neck and back injuries" requiring physical therapy and prohibiting him from working. (Document No. 1.) In his response to the Defendants' Motion, he also states that Defendant Deputy Lambert ran up to him, slammed his forearm into his throat, "thereby probably permanently injuring" him. (Document No. 54, p. 2.) The Defendants have produced copies of Plaintiff's medical records from Beckley Medical Imaging, dated June 8, 2001, and October 31, 2003, which indicate no abnormalities to Plaintiff's cervical spine. (Document No. 53, Exhibits H-I.) Plaintiff has not produced any evidence beyond his own statements, that he was injured as a result of Defendant Deputy Lambert's actions. Even considering Plaintiff's statements, he does not particularize his

injury; he states in a conclusory manner that he suffered serious neck and back injuries. Although Plaintiff avers that his medical records in his possession at the Regional Jails were confiscated, there is no evidence of record that he requested copies of his medical files from either the medical facilities themselves, or from the Defendants, who Plaintiff alleges refused to provide him copies of his records. Furthermore, the Defendants, having examined Plaintiff's medical records from the Regional Jail and Raleigh General Hospital, have produced only two reports from Beckley Medical Imaging and assert that his injuries do not even arise to the level of *de minimis*. In the absence of evidence to the contrary, the undersigned considers the lack of a serious injury as further evidence, but not dispositive evidence, that excessive force was not used.

Accordingly, the undersigned finds that Plaintiff has failed to demonstrate that Defendant Deputy Lambert used excessive force in restraining him in violation of his right to due process under the Fourteenth Amendment.

### 2.    Qualified Immunity Defense.

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there was no protection against suits accusing them of misconduct in the performance of their public duties. State officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). In Harlow, the Court stated

that once a defendant affirmatively pleads the defense of qualified immunity, the trial judge may determine

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. In a case in which the defense of qualified immunity is raised, the Court looks to the evidence before it in the light most favorable to the plaintiff when conducting its inquiry of whether the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 840, 133 L.Ed.2d 773 (1996). The District Court must determine first whether "particular conduct occurred," and second, "whether uncontroverted conduct represented the [violation of a constitutional right]." Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996), reh'g en banc denied, 105 F.3d 174, cert. denied, 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997). Only if the Court determines that the plaintiff alleges the violation of a clearly established constitutional right does the Court then proceed to determine whether a reasonable person in the defendants' position should have known that their conduct was illegal. Id.; Leverette v. Bell, 247 F.3d 160, 166 (4th Cir. 2001), cert. denied, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001)(The Fourth Circuit follows a two-step sequential analysis for determining the validity of a qualified immunity defense: (1) the Court must determine whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and, if so, (2) the Court then proceeds to consider whether that right was clearly established at the time of the purported violation.); Pittman v. Nelms, 87 F.3d 116, 199 (4th Cir. 1996); DiMeglio v. Haines, 45

F.3d 790, 795 (4th Cir. 1995).

> The responsibility imposed on public officials to comply with constitutional requirements is commensurate with the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.  It is not measured by the collective hindsight of skilled lawyers and learned judges. * * * "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

Jackson v. Long, 102 F.3d 722, 730-31 (4th Cir. 1996). Finding therefore consistently with Harlow that issues of qualified immunity should be resolved at the earliest possible stage of the litigation, the Fourth Circuit has adopted a "heightened pleading standard." Dunbar Corp. v. Lindsey, 905 F.2d 754, 763 (4th Cir. 1990); see also Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)(noting that qualified immunity is "an *immunity from suit* rather than a mere defense to liability" and "such pretrial matters as discovery are to be avoided if possible[.]" (Emphasis in opinion.)). The "heightened pleading standard" requires specification of the clearly established rights involved and relates to the degree of factual specificity required in the Complaint. Dunbar Corp., 905 F.2d at 763.

The undersigned finds that the facts viewed in the light most favorable to the Plaintiff do not establish a deprivation of an actual constitutional right. Defendants' qualified immunity defense is therefore meritorious, and Plaintiff's claims must be dismissed for this additional reason.

### 3.    Municipal/Vicarious Liability.

Plaintiff seeks recovery in this civil action from the Raleigh County Sheriff's Department. In Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978), the Supreme Court held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Consequently, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. Id., 436 U.S. at 691, 98 S.Ct. at 2036. To impose liability on a municipality under § 1983, the plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994); see also, Monell, 436 U.S. at 694, 98 S.Ct. at  037-38; Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999), cert. denied, 528 U.S. 1189, 120 S.Ct. 1243, 146 L.Ed.2d 102 (2000). The Fourth Circuit has defined an official policy as "'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time' . . . and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" Semple, 195 F.3d at 712 (citations omitted).

To impose liability on the Raleigh County Sheriff's Department, Plaintiff must plead and prove the existence of an official policy or custom of this Defendant, which caused the deprivation of his constitutional rights. "Where an officer's actions are reasonable . . . the Court need not address a plaintiff's federal claims against the police department because 'in the absence of any underlying use of force . . . liability cannot be placed on either the non-shooting officer, a supervisor, or the City.'" Neiswonger v. Hennessey, 89 F.Supp.2d 766, 775 (N.D. W.Va. 2000)(*quoting* Sigman v. Town of Chapel Hill, 161 F.3d 782, 788 (4th Cir. 1998).). The undersigned has determined that Defendant Deputy Lambert's restraining Plaintiff did not constitute excessive force in violation of Plaintiff's Fourteenth Amendment right to due process. Accordingly, the Raleigh County Sheriff's Department cannot be held liable under § 1983. Additionally, Plaintiff has failed to demonstrate that an official policy or custom of the Raleigh County Sheriff's Department caused the alleged constitutional

19

violation. Defendant Raleigh County Sheriff Department's Motion must be granted.

**PROPOSAL AND RECOMMENDATION**

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**, that the District Court **GRANT** Defendants' Motion for Summary Judgment (Document No. 52.), **DISMISS** this case with prejudice, and **REMOVE** this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby FILED, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff, *pro se*.

ENTER: August 31, 2005.

R. Clarke VanDervort
United States Magistrate Judge